| |
|---|
| **TS Falcon I, LLC v Golden Mtn. Fin. Corp.** |
| 2024 NY Slip Op 30386(U) |
| February 1, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 655783/2023 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

-----------------------------------------------------------------------------------X

TS FALCON I, LLC,

                                   Plaintiff,

                      - v -

GOLDEN MOUNTAIN FINANCIAL CORP., GOLDEN
MOUNTAIN FINANCIAL HOLDINGS CORP., and GMF
MIDCO, LLC,

                                  Defendants.

-----------------------------------------------------------------------------------X

| INDEX NO. | 655783/2023 |
|---|---|
| MOTION DATE | |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON
MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 50, 51, 52, 53, 54, 65, 66, 67

were read on this motion to/for                INJUNCTION/RESTRAINING ORDER             .

Upon the foregoing documents, it is

     Plaintiff TS Falcon I, LLC moves pursuant to CPLR Article 63 for a preliminary injunction enjoining defendants Golden Mountain Financial Corp. (OpCo), Golden Mountain Financial Holdings Corp. (HoldCo) and GMF Midco, LLC (MidCo, together with HoldCo, Guarantors) from "(1) further breaching the Revolving Loan and Security Agreement, dated January 22, 2021; (2) effectuating a transaction between Defendants, on the one hand, and Halsa Holdings, LLC or Igaldl, Ltd [Halsa] and their affiliates, on the other; and (3) taking any action to dissipate Plaintiff's collateral in Defendants." (NYSCEF 4, Proposed OSC at 5; NYSCEF 3, Koplewicz aff ¶5.)

**655783/2023 TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No. 001**

**Page 1 of 15**

INDEX NO. 655783/2023

RECEIVED NYSCEF: 02/01/2024

**Background**

Plaintiff is a secured lender to OpCo[1], the borrower; HoldCo and MidCo are the guarantors. (NYSCEF 1, Complaint ¶1.) Plaintiff holds less than 50% of OpCo's common stock. (*Id.* ¶42.) OpCo's most significant assets are deferred tax credits and net operating losses (collectively NOLs) which can be used by an entity with significant revenue to offset tax obligations subject to federal income tax limitations; defendants cannot sell the NOLs. (*Id.* ¶¶30, 46.) The NOLs are valueless unless defendants operate an income generating business or acquire an earning asset. (NYSCEF 44, Govindan[2] aff ¶9.)

On January 22, 2021, plaintiff entered a revolving loan and security agreement (Agreement) for up to $5 million with FNBC. (*Id.* ¶¶14- 15; NYSCEF 1, Complaint ¶27.) The purpose of the loan was to cover expenses for a transaction to monetize the NOLs. (NYSCEF 44, Govindan aff ¶12.) The parties also entered into a January 21, 2021 agreement with defendants giving plaintiff an option to take up to an 84.9 % stake in OpCo on January 24, 2024. (*Id.* ¶¶45-48; NYSCEF 46, Subscription Agreement.)

On March 17, 2021, plaintiff filed a UCC statement. (NYSCEF 3, Koplewicz aff ¶14.) The secured collateral is described in Annex B to the Agreement which includes 18 categories of assets; relevant here are "all general intangibles." (NYSCEF 7, Agreement at 21/43.[3]) Pursuant to the Agreement, plaintiff loaned $1 million on January 22, 2021, $250,000 on February 8, 2022, $200,000 on December 28, 2022 and

---

[1] In March 2021, when First NBC Bank Holding Company (FNBC) emerged from bankruptcy, FNBC became OpCo, a wholly owned subsidiary of HoldCo. (NYSCEF 1, Complaint ¶13.)
[2] Shivan Govindan is defendants' "chairman." (NYSCEF 44, Govindan aff ¶1.)
[3] NYSCEF pagination.

$85,000 on October 25, 2023. (NYSCEF 1, Complaint ¶¶27, 38.) OpCo made a partial payment in March 2022, but never again. (*Id.* ¶29.)

On June 2, 2023, plaintiff sent a notice of defaults as of March 31, 2023 asserting a variety of defaults including failure to: "(i) pay Falcon the accrued interest owed on the applicable due dates since March 31, 2023, as required by Section 7(a) of the Loan Agreement; (ii) to use its best efforts to work diligently with the Transferor Stockholder to reach resolution regarding its purported transfers; (iii) to pay amounts that OpCo owed under a separate agreement; and (iv) hold an annual meeting of stockholders by January 31, 2023, as required by Section 7(b) of the Loan Agreement as reflected in Amendment No. 3 to the Loan Amendment." (*Id.* ¶32.) On June 8, 2023, plaintiff sent a payoff letter demanding $2 million and again on August 26, 2023 for $2,073,957.[4] (*Id.* ¶¶34, 37.) On October 26, 2023, plaintiff exercised the option to take the entire 84.9 % stake in OpCo. (NYSCEF 47, Option Notice.)

On October 30, 2023, HoldCo amended its bylaws to require wide-ranging disclosures for nominees to the board of directors and raised the ownership threshold from 10% to 47% for shareholders to call special stockholder meetings. (NYSCEF 1, Complaint, ¶42.) On November 15, 2023, plaintiff received a notice to stockholders for a December 1, 2023 meeting (Notice) at which "HoldCo will seek stockholder approval (i) for a cashless transaction between OpCo and affiliates of Halsa Holdings, LLC[5] (the 'Halsa Merger'); (ii) to form a subsidiary of OpCo; (iii) for OpCo to obtain additional financing from a third-party lender; and (iv) to amend and restate OpCo's Certificates of

---

[4] By December 8, 2023, the payoff amount grew to $3,536,425 of which approximately $1.5 million were from legal fees. (NYSCEF 45, December 8, 2023 Letter.)
[5] Halsa is a California cannabis company. (NYSCEF 44, Govindan aff ¶42.)

Incorporation."[6] (NYSCEF 1, Complaint ¶45.) Defendants did not obtain plaintiff's consent. (NYSCEF 3, Koplewicz aff ¶27.)

Plaintiff objects to the proposed transaction with Halsa, which according to the Notice is cashless, forms a subsidiary to OpCo, OpCo obtains additional financing, and amends OpCo's certificate of incorporation, all without plaintiff's consent. (NYSCEF 1, Complaint ¶45.) Koplewicz asserts that "OpCo's failure to cure its defaults is an attempt to prevent Falcon from (1) taking steps to protect the collateral securing its loan and (2) exercising its rights as a substantial stockholder, as well as a lender to OpCo." (NYSCEF 3, Koplewicz ¶24.)

**This Action**

Plaintiff initiated this action on November 22, 2023 alleging (1) breach of contract against defendants for failure to (i) "comply with Sections 5 and 9 of the Loan Agreement;" (ii) "hold an annual stockholders meeting by January 31, 2023;" (iii) "use best efforts to work diligently with the Transferor Stockholder to reach resolution regarding its purported transfers;" and (iv) for the amendment to HoldCo's "bylaws without Falcon's consent to, among other things, (a) require that nominations for its board of directors include extensive disclosures that are overly burdensome and go beyond those typically required for a private company and (b) make it more difficult for stockholders— particularly Falcon that holds ... percent of HoldCo's common stock—to call a special meeting of stockholders by increasing the required ownership threshold from ten (10) percent to forty-seven (47) percent of shares entitled to vote;" (2) breach

---

[6] Defendants are also in discussions with Igadl, a Colorado cannabis company, but that is not mentioned in the Notice. (*Id*. ¶42.)

655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL          Page 4 of 15
Motion No.  001

[* 4]                                                    4 of 15

of contract against the Guarantors for the same reasons; (3) anticipatory breach of contract against OpCo and Guarantors on the ground that defendants are seeking shareholder approval without consent to: "(i) enter into the Halsa Merger, pursuant to which it will form a subsidiary of OpCo, in violation of Sections 12(i) and 12(l); (ii) transfer and dissipate OpCo's NOLs and, thereby, taking action that is reasonably expected to impair any intangible asset of OpCo and HoldCo, in violation of Sections 12(h) and 12(m); (iii) permit Falcon's first priority security interest to be subject to claims of other persons and entities, in violation of Sections 10(b) and 12(h); and (iv) to amend and restate OpCo's Certificate of Incorporation, in violation of Section 12(q);" and (4) indemnification. (NYSCEF 1, Complaint, ¶¶51, 54-60, 66-69.) Damages are allegedly $2.3 million. (*Id.* at 17.)

For injunctive relief under CPLR 6301, the movant must establish likelihood of success on the merits of the action; the danger of irreparable harm in the absence of a preliminary injunction; and a balance of equities in favor of the moving party. (*Gliklad v Cherney*, 97 AD3d 401, 402 [1st Dept 2012] [citations omitted].) "A preliminary injunction should not be granted unless the right thereto is plain from the undisputed facts and there is a clear showing of necessity and justification." (*O'Hara v Corporate Audit Co.*, 161 AD2d 309, 310 [1st Dept 1990] [citations omitted].)

**Likelihood of Success**

A cause of action for breach of contract requires plaintiff to demonstrate "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." (*Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010] [citation omitted].)

**655783/2023  TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No. 001**

Page 5 of 15

[* 5]

5 of 15

Plaintiff satisfies the first requirement for a breach of contract claim: the Agreement is a contract between the parties and defendants are responsible for repayment of funds plaintiff loaned.  Defendants contend that the Agreement is unenforceable due to plaintiff's misrepresentations to GMFC that induced GMFC to enter the loan under false pretenses.  However, this argument is barred by the Agreement's integration clause (§15).  (*See Gen. Bank v Mark II Imports, Inc.*, 293 AD2d 328, 328 [1st Dept 2002] [fraudulent inducement claim "is, as a matter of law, foreclosed by an integration clause"].)

Likewise, the Agreement is not void under GOL §5-501(6)(b) --New York's criminal usury laws—which applies to loans under $2.5 million.  Here, the amount due is $3.5 million, including legal fees which plaintiff is permitted to add to the amount due. (NYSCEF 7, Agreement §13.)   In any case, though the principal amount loaned to date is under $2.5 million, plaintiff agreed to loan up to $5 million.  (*See SpecFin Mgmt. LLC v Elhadidy*, 201 AD3d 31, 42 [3rd Dept 2021] [usury laws inapplicable where lender agreed to provide up to $2.5 million but only advanced $370,472.13].)  Finally, these highly sophisticated and well-represented parties, who negotiated for 60 days (NYSCEF 66, Koplewicz ¶8), are not the intended beneficiaries of this provision – "borrowers who need or deserve protection."  (*NML Capital v Republic of Argentina*, 621 F3d 230, 239 [2d Cir 2010].)

Defendants contend that plaintiff is preventing defendants from monetizing the NOLs by rejecting all of defendants' proposed transactions and failing to propose any transactions—effectively asserting that plaintiff breached first.  (NYSCEF 44, Govindan

aff ¶¶19, 23, 39.) Plaintiff counters that it brought Halsa to the bargaining table. (NYSCEF 66, Koplewicz aff ¶7.)

A movant cannot establish a likelihood of success on the merits where there are "sharp issues of fact." (*Res. Bd. of Mgrs. of the Columbia Condo. v Alden*, 178 AD2d 121, 123 [1st Dept 1991]; *see also Sussman Educ., Inc. v Gorenstein*, 175 AD3d 1188, 1189-90 [1st Dept 2019] [holding that it was an improvident exercise of the court's discretion to grant a preliminary injunction where parties raised "sharp issues of fact" concerning defendant's alleged breaches].) However, while the purported issue of fact here–whether plaintiff breached the Agreement first by failing to cooperate in finding an appropriate transaction – would typically preclude a preliminary injunction, defendants do not contradict plaintiff's assertion that plaintiff has in fact cooperated.[7] In his sur-reply affidavit, Colon discusses the two years of negotiations with defendants. (NYSCEF __, Colon aff ¶¶4, 5.) In Govindan's sur-reply affidavit, he states that he has known Halsa for several years and began discussing a merger in 2021. (NYSCEF __, Govindan aff ¶4.) However, neither Colon nor Govindan dispute that plaintiff introduced defendant to Halsa.

As to defendants' breach, it is undisputed that defendants have failed to make payments required by §5 of the Agreement, failed to hold an annual stockholder

---

[7] On the record on December 21, 2023, the court invited defendants to submit an agreement as defendants' statements as to what the transaction would look like were amorphous, and thus, insufficient. Instead, defendants submitted the affidavits of Christoper Colon, Halsa's CEO, and Govindan, neither of which annexed an agreement or even a term sheet. The affiants merely repeat, with more details, their aspirations. Admittedly, there is no funder which would pay off plaintiff's loan. (NYSCEF __, Govindan aff ¶¶8-9; NYSCEF __ Colon aff ¶10.) Accordingly, the court treats the affidavits as sur replies. Defendants shall file the Govindan and Colon affidavit in NYSCEF. Plaintiff shall file its December 26, 2023 letter in NYSCEF.

655783/2023  TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL          Page 7 of 15
Motion No. 001

[* 7]                                    7 of 15

meeting by January 31, 2023, failed to use best efforts to work diligently with the Transferor Stockholder to reach resolution regarding transfers, and amended their bylaws without plaintiff's consent. Therefore, at this stage on this record, it appears that plaintiff will likely succeed on its first cause of action.

The Guarantors guaranteed payment only and their promise to pay is irrevocable and unconditional. (NYSCEF 7, Agreement §9.) Defendants fail to address plaintiff's claim which constitutes waiver. Therefore, plaintiff will likely succeed on the guarantee in the second cause of action.

The indemnification provision clearly provides that defendants are responsible for legal fees to enforce the Agreement. (NYSCEF 7, Agreement §13.) Defendants fail to address this argument which constitutes waiver. Therefore, plaintiff will likely succeed on its indemnification claim.

"An anticipatory breach of a contract . . . can be either a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach or a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." (*Princes Point LLC v Muss Dev. L.L.C.*, 30 NY3d 127, 133 [2017] [internal quotation marks and citations omitted].) Holdco's Notice unequivocally demonstrates its intent to seek: (1) stockholder approval for the cashless Halsa Merger, (2) additional financing from a third-party lender, and (3) to amend and restate OpCo's Certificates of Incorporation. However, HoldCo has not requested plaintiff's written consent to the Halsa Merger, as required by §12 of the Agreement. Therefore, plaintiff is likely to succeed on its third cause of action.

**655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No.  001**

**Page 8 of 15**

**Irreparable Harm**

Plaintiff asserts that dissipation of the value of the NOLs will cause irreparable harm to plaintiff. Defendants challenge plaintiff's irreparable injury. First, defendants assert that plaintiff can be compensated by money damages which precludes irreparable injury. However, plaintiff asserts that its collateral will be dissipated by the Halsa transaction which can be an exception to the bar against a preliminary injunction when money damages are available.

"[A] secured creditor *does* have a legally recognized interest in preventing dissipation of encumbered property" which constitutes irreparable harm. (*White Oak Commercial Finance, LLC v EIA Inc.,* 2023 WL 4149527, *7, 2023 NY Slip Op 32088(U), 11 [Sup Ct, NY County 2023], citing *Winchester Glob. Tr. Co. v Donovan*, 58 AD3d 833, 834 [2d Dept 2009] ["holding that injunctive relief was properly granted as the uncontrolled disposition of assets 'would threaten to render ineffectual any judgment which the plaintiff might obtain' in an action by a secured party to set aside allegedly fraudulent conveyances made 'in derogation of the plaintiffs perfected security interest'"]; *see also Goldman Sachs Bank USA v Schreiber*, 2022 WL 60650, *3 [Sup Ct, NY County 2022] [granting preliminary injunction enjoining the transfer of assets where plaintiff, a secured creditor, sought to prevent a dissipation of collateral, and the sale of such assets in direct contravention of agreements would cause irreparable harm "by taking away the value of the collateral"].)

It is undisputed that the purpose of the Halsa transaction is to monetize the NOLs, but that means that the NOL's will be used to offset Halsa's revenue which

**655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No.  001**

**Page 9 of 15**

9 of 15

[* 9]

necessarily decreases the NOLs. Therefore, plaintiff has stated irreparable harm if the NOLs are plaintiff's encumbered property.

Second, defendants challenge whether the NOLs are collateral under the Agreement, and, if not, then dissipation of the NOLs will not irreparably harm plaintiff. Defendants argue that plaintiff's UCC filing[8] did not securitize the NOLs because it cannot file a UCC on NOLs. Relying on *City of Chicago v Michigan Beach Housing Co-op*, 242 Ill App3d 636 (App Court, First Dist, Second Div 1993), defendants assert that NOLs are not general intangibles under the UCC. In *City of Chicago,* Chicago sued a cooperative building to which Chicago had loaned funds in exchange for a security interest in the building. (*Id*.) Chicago sought to recoup syndication funds from the limited partnership that subsequently acquired the building based on Chicago's security interest in the building. (*Id*.) The Illinois Court held that

> "the tax credits at issue cannot serve as collateral because they are not general intangible personal property. Tax credits, as *Randall* instructs us, have no independent value in and of themselves; instead, they are an incidental benefit that investors receive when they purchase a security evidencing their interest in a limited partnership. The investors cannot transfer or sell the tax credits separate from the security itself. The limited partnership did not 'sell' the tax credits to the investors; the tax credits remain exactly where they resided before the sale of the securities, in the limited partnership. Accordingly, it is clear that the NTC defendants in this case did not purchase and do not own tax credits; instead, they bought and now possess securities which gave them an interest in the Michigan Beach Limited Partnership."

---

[8] The UCC statement provides: "[t]his financing statement covers the following collateral: All assets of the Debtor whether now existing or hereafter arising or acquired." (NYSCEF 9, UCC Statement.)

655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL          Page 10 of 15
Motion No.  001

10 of 15

[* 10]

(*Id.* at 647.)   In *Randall v Loftsgaarden*, 478 US 647 (1986), which addressed whether tax credits constitute income under §12(2) of the Securities Act of 1933, the U.S. Supreme Court found that

> "[t]he tax benefits attributable to ownership of a security initially take the form of tax deduction credits.  These have no value in themselves; the economic benefit to the investor—the true 'tax benefit'—arises because the investor may offset tax deductions *against* income received from other sources or use tax credits to reduce the taxes otherwise payable on account of such income.  Unlike payments in cash or property received by virtue of ownership of a security—such as distributions or dividends in stock, interest on bonds, or a limited partner's distributed share of the partnership's capital gains or profits—the 'receipt' of tax deductions or credits is not itself a taxable event, for the investor has received no money or other 'income' within the meaning of the Internal Revenue Code.
>
> * * * * * *
>
> Respondents essentially ask us to treat tax benefits as a separate asset that is acquired when a limited partner purchases a share in a tax shelter partnership. But the legal form of the transaction does not reflect this treatment.  Petitioners purchased securities, thereby acquiring freely alienable rights to any income that accrued to them by virtue of their ownership.  They did not, however, also acquire a separate, freely transferable bundle of tax losses that would have value apart from petitioners' status as partners.  For obvious reasons, tax deductions and tax credits are not, in the absence of a statutory provision to the contrary, freely transferable from one person to another if wholly severed from the property ... to which they relate ... .  Accordingly, *we decline to treat these tax losses as so much property created by the promoters of the partnership.*"

(*Id.* at 656–57, 666–67 [emphasis added].)

The court finds defendants' cases distinguishable.  In the *City of Chicago*, Chicago's security interest in the building could not be expanded to include tax credits which were attached to defendants' subsequent partnership securities.  Likewise, in *Randall*, petitioners purchased securities with tax credits attached to them and the case did not involve the UCC.  Here, the circumstances are significantly different, and thus,

**655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No.  001**

**Page 11 of 15**

11 of 15

the court finds that the NOLs constitute general intangibles which are very clearly the intended collateral under the Agreement and were secured by the UCC statement.

This is a case about NOLs. Defendants concede that

> "[t]he value of GMFC's NOLs can only be realized by GMFC and under certain limited conditions, such as, by operating a taxable income-generating business or acquiring a significant earning asset base. Without such a business, GMFC's NOLs will remain unutilized and Golden Mountain remains completely dependent on the Falcon to fund its operations through the Loan Agreement."

(NYSCEF 44, Govindan aff ¶38.) Defendants acknowledge that their "most valuable assets are GMFC's NOLs." (*Id.*; *see also* NYSCEF 50, Defendants' MOL at 10.)

Indeed, the NOLs are effectively defendants' only asset. According to plaintiffs

> "OpCo does not engage in any significant business operations or have any revenue streams. Thus, the Company's most significant asset from which it could reasonably expect to realize value and pursuant to which Falcon could recoup its loan proceeds are the NOLs. The NOLs are of significant value because, subject to certain federal income tax limitations, they can be used by an entity with significant revenue to offset its tax obligations. Accordingly, it is a significant asset that could serve as consideration for a potential transaction with a company with significant revenue streams that would not only provide value to its stockholders but also enable Falcon to be repaid in full."

(NYSCEF 1, Complaint ¶46.)

The court is guided, as it must be, by the Agreement. Annex B describes the Collateral as follows: "All General Intangibles" and "all other personal property and rights of every kind." (NYSCEF 7, Agreement Annex B (g), (r) at 21/43.) Annex B also provides that should "the definition of any category and type of collateral" be "expanded by the UCC," then that expanded definition applies to this Agreement. (*Id.*) Under Article 9 of the UCC, a "general intangible" is "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of

**655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No.  001**

**Page 12 of 15**

[* 12]                                                   12 of 15

credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software. (UCC § 9-102[42].) The UCC classifies property into three categories: (i) real property, (ii) fixtures, and (iii) personal property, but the NOLs are clearly neither real property nor fixtures, necessarily making them personal property.

Defendants also insist there will be no irreparable harm because plaintiff's loan will be paid as a condition of the Halsa transaction. Without the loan, plaintiff will have no securitized assets, and thus, the NOLs cannot be dissipated from plaintiff's perspective. As discussed above and on the record on December 21, 2023, the court has no evidence of such an agreement, other than the aspirational statements from defendants. Moreover, there is no evidence that the parties have located funding to pay off the loan. (*See* NYSCEF __, Colon aff ¶10.)

Finally, plaintiff has established nonspeculative irreparable harm from defendants' corporate governance changes and changes to the bylaws. (*See Broadway Assocs v Park Royal Owners, Inc.*, 2002 NY Misc LEXIS 2114, *11-12 [Sup Ct, NY County 2002] [holding that "[a] corporate shareholder who has been wrongfully denied the fundamental right to vote their shares and gain representation on the board of directors is presumed to be threatened with irreparable harm" where the corporate electoral process is tainted.]; *see also Bank of NY Co v Irving Bank Corp*, 139 Misc 2d 665 [Sup Ct, NY County 1988].)

**Balance of Equities**

"In order for a preliminary injunction to issue it must be shown that the irreparable injury to be sustained by the plaintiff is more burdensome to it than the harm caused to

655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL            Page 13 of 15
Motion No.  001

13 of 15

defendant through imposition of the injunction." (*Nassau Roofing & Sheet Metal Co., Inc. v Facilities Dev. Corp.,* 70 AD2d 1021, 1022 [3d Dept 1979] [citation omitted].) Plaintiff asserts that its collateral will be impaired without the preliminary injunction. Defendants challenge whether plaintiff will be harmed at all. Defendants' argument presumes that the loan will be paid in full, but as discussed above, the court has no such evidence. Certainly, granting the preliminary injunction will impede the Halsa transaction, but it will not interfere with finding another transaction, nor restructuring the Halsa transaction in such a way that plaintiff would consent. Therefore, the court finds that the equities favor plaintiff.

Finally, while the court accepts defendants' recitation of the procedural history of the Delaware actions involving plaintiff's rights as a shareholder and option holder under Delaware law, defendants do not request any relief or offer any law applicable to this preliminary injunction motion. Instead, defendants assert that they intend to move for a stay of this action in favor of the Delaware action. Therefore, there is nothing before the court on which the court can determine that the Delaware action precludes this action.

Accordingly, it is

ORDERED that the parties shall file in NYSCEF the affidavits and letter sent to the court by email on December 26, 2023; and it is further

ORDERED that plaintiff's motion for a preliminary injunction is granted; and it is further

ORDERED that the undertaking is fixed in the sum of $3.5 million conditioned that the plaintiff, if it is finally determined that he it was not entitled to an injunction, will

**655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL**
**Motion No.  001**

**Page 14 of 15**

14 of 15

[* 14]

pay to defendants all damages and costs which may be sustained by reason of this injunction; and it is further

ORDERED that defendants, their agents, servants, employees and all other persons acting under the jurisdiction, supervision and/or direction of defendant, are enjoined and restrained, during the pendency of this action, from doing or suffering to be done, directly or through any attorney, agent, servant, employee or other person under the supervision or control of defendant or otherwise, any of the following acts: (1) further breaching the Revolving Loan and Security Agreement, dated January 22, 2021; (2) effectuating a transaction between Defendants, on the one hand, and Halsa Holdings, LLC or IgaldI, Ltd and their affiliates, on the other; and/or (3) taking any action to dissipate Plaintiff's collateral in Defendants; and it is further

ORDERED that the parties are directed to submit the December 21, 2023 transcript by filing it in NYSCEF and emailing the court; and it is further

ORDERED that counsel are directed to appear for a preliminary conference on February 20, 2024 at 10 AM unless the parties file a PC order on consent prior to that date.

20240201192756AMASLEY45BBB27A8288455B9AB79F3B7187286A

| 2/1/2024 | | | | ANDREA MASLEY, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

655783/2023   TS FALCON I, LLC vs. GOLDEN MOUNTAIN FINANCIAL CORP. ET AL
Motion No.  001

Page 15 of 15

15 of 15